UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SIDNEY DONALD JENKINS III,

Plaintiff,

v.

ROBOT KAY, *et al.*,

Defendants.

CASE NO. 3:18-cv-05049-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: June 7, 2019

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and local Magistrate Judge Rules MJR1, MJR3, and MJR4.  Plaintiff proceeds *in forma pauperis* ("IFP") and *pro se*.  *See* Dkt. 6.  This matter is before the Court on defendants' motion for summary judgment of plaintiff's claims.  *See* Dkt. 42.

Plaintiff, a prisoner who was on a halal meal plan and who participated in Ramadan in 2017, alleges that after a food contamination incident, defendants continued to serve contaminated halal food and Ramadan meals without meaningful alternative meals and in doing

1  so, forced plaintiff to choose between starving or consuming contaminated food.  Defendants
2  request summary judgment on plaintiff's claims of First, Eighth, and Fourteenth Amendment
3  violations.  Because plaintiff has failed to provide evidence to contradict that he could change his
4  meal plan at any time by making a formal request; to support that even assuming that the food
5  served after Ramadan was contaminated, workers should have known as much; and to show that
6  defendants acted on the basis of discriminatory intent, defendants' summary judgment motion
7  should be granted.

## BACKGROUND

Plaintiff, who is incarcerated at Clallum Bay Corrections Center ("CBCC") brings this action *pro se* and *in forma pauperis* under § 1983.  *See* Dkt. 16.  Plaintiff alleges that defendants—ten food service workers at CBCC, a CBCC food manager (Jerry McHaffie), and the Assistant Director of Correctional Industries (J. Scott Edwards)—served plaintiff contaminated halal food from May to July 2017, denied plaintiff regular, non-halal food (which was not contaminated) other than minimal servings, and thereby caused plaintiff to subsist on inadequate meals.  *See* Dkt. 16.  Plaintiff contends that these actions constituted violations of Equal Protection under the Fourteenth Amendment, cruel and unusual punishment under the Eighth Amendment, and retaliation in violation of the First Amendment.  *See* Dkt. 16, at 16.

Specifically, plaintiff alleges that on May 19, 2017, the Department of Corrections ("DOC") issued a directive stating that foods prepared at another institution had been prepared with contaminated water and that the DOC had removed such foods from meal plans until the "issues have been resolved."  Dkt. 16, at 6.  The directive stated that DOC would "determine

1    when [DOC] can resume normal operations and will be sure to notify you . . . once we have
2    information." Dkt. 16, at 6–7.

3    Plaintiff alleges that nevertheless, on May 20, a food service worker defendant attempted
4    to serve plaintiff a contaminated halal food tray for breakfast and that plaintiff was not allowed
5    to take a regular breakfast, instead being served only a small portion of cereal and milk. *See* Dkt.
6    16, at 8. For lunch and dinner that day, another food service worker defendant refused to provide
7    plaintiff with an alternative meal and otherwise allowed him only a salad and roll with
8    margarine. *See* Dkt. 16, at 9. Plaintiff was offered only his halal cold breakfast tray for the next
9    day, which he refused. *See* Dkt. 16, at 10. Plaintiff alleges that food service worker defendants
10   continued to disallow plaintiff an alternative breakfast to his contaminated halal food tray, other
11   than cereal and milk, on May 23 and 25. *See* Dkt. 16, at 10–11.

12   Plaintiff further alleges that starting on May 26, the first day of Ramadan, he rejected all
13   halal meal trays as being contaminated, requiring him to "subsist[] solely on his . . . breakfast
14   sack, and food from the quarterly package program received" May 27. Dkt. 16, at 11, 13. On
15   June 1, plaintiff filed a motion for injunctive relief in this Court, and he alleges that after he had
16   completed fasting for Ramadan, food service workers retaliated against him by refusing to
17   provide him with adequate food. *See* Dkt. 16, at 13. Plaintiff claims that although he requested a
18   regular food tray in lieu of his allegedly contaminated halal meal on June 26 (breakfast, lunch,
19   and dinner), June 27 (breakfast and lunch), June 28 (breakfast, lunch, and dinner), June 29
20   (breakfast and dinner), June 30 (breakfast and dinner), July 1 (breakfast and dinner), July 2
21   (lunch and dinner), July 3 (breakfast and dinner), and July 4 (breakfast and dinner), food service
22   worker defendants refused to provide him food other than cereal and milk for breakfast and a roll
23   with margarine for dinner. *See* Dkt. 16, at 16–21. He claims that on July 4, a food service
24

REPORT AND RECOMMENDATION - 3

1 worker defendant taunted him that "they did'n' like ya' runnin' to the court like ya did" and that
2 thereafter, until July 11, defendants continued a "systematic deprivation of food." Dkt. 16, at 21.
3 Plaintiff alleges that these actions constituted deliberate indifference to his health,
4 retaliation for taking court action, and unlawful discrimination against Ramadan participants.
5 *See* Dkt. 16, at 25–26. Plaintiff also appears to allege that defendant Edward's resumption of
6 food production at the contaminated facility constituted cruel and unusual punishment. *See* Dkt.
7 16, at 15.
8 Defendants moved for summary judgment on all of plaintiff's claims and provided
9 plaintiff with notice of their dispositive motion. *See* Dkts. 42, 48. Plaintiff has filed a response;
10 however, defendants did not file a reply. *See* Dkt. 50. In addition to the parties' briefing
11 regarding summary judgment and because plaintiff is *pro se*, the Court "must consider as
12 evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in
13 motions and pleadings, where such contentions are based on personal knowledge and set forth
14 facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury
15 that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d
16 918, 923 (9th Cir. 2004). Thus plaintiff's complaint, which was signed under penalty of perjury,
17 is being considered as evidence. *See* Dkt. 16, at 30.
18
19 **STANDARD OF REVIEW**
20 Summary judgment is appropriate "if the movant shows that there is no genuine dispute
21 as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
22 56(a). "In ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be
23 believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor.'" *Moldex-*
24

1  *Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (quoting *Anderson v.*

2  *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Further, "'courts should construe liberally

3  motion papers and pleadings filed by *pro se* inmates and should avoid applying summary

4  judgment rules strictly.'"  *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas*

5  *v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *see also Blaisdell v. Frappiea*, 729 F.3d 1237,

6  1241 (9th Cir. 2013) (a court must not hold "missing or inaccurate legal terminology or muddled

7  draftsmanship against" a *pro se* inmate).  "This rule exempts *pro se* inmates from *strict*

8  compliance with the summary judgment rules, but it does not exempt them from *all* compliance."

9  *Soto*, 882 F.2d at 872.

10        The moving party is entitled to summary judgment if the evidence produced by the

11  parties permits only one conclusion.  *Anderson*, 477 U.S. at 251.  "To defeat summary judgment,

12  the nonmoving party must produce evidence of a genuine dispute of material fact that could

13  satisfy its burden at trial."  *Sonner v. Schwabe N.A., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018)

14  (citing *Anderson*, 477 U.S. at 255).  "Credibility determinations, the weighing of the evidence,

15  and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"

16  *Anderson*, 477 U.S. at 255.  Nonetheless, the party opposing the motion must do more than

17  simply show that there is some metaphysical doubt as to the material facts.  *Matsushita Elec.*

18  *Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  And regarding materiality, a fact is only

19  material if it "might affect the outcome of the suit under the governing [substantive] law[.]"

20  *Anderson*, 477 U.S. at 248.

21        "A party asserting that a fact cannot be or is genuinely disputed must support the

22  assertion by" either "citing to particular parts of materials in the record" or "showing that the

23  materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

24

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). And although "[t]he court need consider only the cited materials," "it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**DISCUSSION**

**I. Motion To Strike**

As a preliminary matter, the Court addresses plaintiff's motion to strike defendant McHaffie's and Jamie Odan's declarations in support of summary judgment. *See* Dkt. 50, at 15. An affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Regarding plaintiff's objection to Dolan's declaration, which discusses discovery of the contamination issue, the modified operational plan, and efforts to replace contaminated items, the undersigned does not rely on Dolan's declaration in deciding defendants' summary judgment motion. Therefore the undersigned declines to rule on plaintiff's motion to strike Dolan's declaration.

Regarding the objection to defendant McHaffie's declaration, plaintiff is incorrect that defendant McHaffie discusses matters of which he could not have personal knowledge. *See* Dkt. 50, at 15. For instance, although plaintiff objects to defendant McHaffie's statement that he instructed staff to pull foods that had the possibility of being contaminated, McHaffie would clearly have personal knowledge of his own actions, including giving instructions. *See* Dkt. 43,

1 at 3.  The analysis set forth below does not rely on any part of defendant McHaffie's declaration
2 that relies on matters outside his personal knowledge.  Plaintiff's motion to strike defendant
3 McHaffie's declaration is denied.

**II.  Cruel and Unusual Punishment Claims**

Plaintiff broadly alleges that the refusal to provide him with regular meal trays in lieu of the allegedly contaminated halal food constituted cruel and unusual punishment in violation of the Eighth Amendment because it caused him to subsist on minimal portions of food.  *See* Dkt. 16, at 25.  He appears to bring these claims against defendant Edwards, the food service worker defendants, and defendant McHaffie.  *See* Dkt. 16, at 25.

To establish a violation of the Eighth Amendment, plaintiff must show that defendants "(1) exposed [him] to a substantial risk of serious harm" and "(2) [were] deliberately indifferent to [his] constitutional rights."  *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016).  The first inquiry requires a showing that there was a "'sufficiently serious' deprivation, such as 'incarcerat[ion] under conditions posing a substantial risk of serious harm.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994)).  The second inquiry is whether the official was subjective aware of the risk—a standard akin to "subjective recklessness." *See Farmer* 511 U.S. at 839.

In support of summary judgment, defendants rely on evidence that at any time, plaintiff could have requested to be removed from the halal diet and been allowed to consume regular food.  *See* Dkt. 44, at 2.  They also provide a grievance documenting that plaintiff had not requested to be removed from his halal diet until July 12 and had instead simply refused his halal food. *See* Dkt. 47-1, at 2.  Defendants also provide the declaration of a CBCC chaplain, who explained that on July 12, plaintiff completed a diet request form, as required by DOC policy,

1  and that same day, the chaplain removed plaintiff from his halal diet. *See* Dkts. 44, at 2; 44-1, at
2  27.

3  In response, plaintiff asserts that food service workers continued to serve contaminated
4  food and that "[p]risoners may quit a religious diet at anytime simply by refusing it" without
5  obtaining a chaplain's approval. Dkt. 50, at 3–5. However, in support, plaintiff relies on only a
6  response to his grievance that included a statement that "the facility cannot force you to consume
7  a meal served for your specific religious diet" (Dkt. 50, at 24) and a DOC policy stating that
8  "[r]equested religious diets will remain in place until the offender requests that it [sic] be
9  removed or changed." Dkt. 50, at 25. Neither of these statements controvert defendants'
10 evidence that a prisoner had to submit a formal request to change his diet, rather than requesting
11 a different meal from food service workers. Conclusory statements, unsupported conjecture,
12 and allegations based merely on belief are insufficient to create a genuine, material issue of fact.
13 *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*,
14 833 F.3d 196, 197–98 & n.1. (9th Cir. 1987) (per curiam).

15 Plaintiff fails to create a genuine issue of fact to controvert defendants' evidence that he
16 could change his meal plan at any time by making a formal request and that he failed to do so
17 until July 12. This is fatal to plaintiff's Eighth Amendment because even assuming that the halal
18 meals were contaminated, plaintiff was not forced to consume the halal meals—rather, he could
19 exercise the option to formally request a change of diet and then receive regular meals. Plaintiff
20 makes no meaningful argument and provides no facts to support that had he made his change-of-
21 diet request earlier, the chaplain would not have approved it.

22 In addition to his broader claim against all defendants for refusal to provide regular meal
23 trays, plaintiff also appears to specifically allege that defendant Edwards violated the Eighth
24

REPORT AND RECOMMENDATION - 8

Amendment by resuming food production under a "modified operational plan when knowing full well" that an environmental impact statement was required "before production can resume regardless of switching water sources." Dkt. 16, at 15. However, plaintiff fails to provide any facts from which a trier of fact could conclude that defendant Edwards was aware of a substantial risk of serious harm that would result to prisoners from resuming production. Plaintiff does not dispute that the health risk of consuming food processed with the contaminated water was "very small" (*see* Dkt. 16, at 6, 14–15). And in light of the undisputed evidence that CBCC prisoners could remove themselves from halal meal plans at any time upon submitting a formal request, plaintiff fails to show that defendant Edwards was deliberately indifferent to a likelihood that prisoners would be forced to subsist on starvation rations.

**III. Retaliation Claims**

Regarding the period after plaintiff completed Ramadan fasting, plaintiff asserts that the food service worker defendants' and defendant McHaffie's[1] (collectively, the "CBCC defendants") refusal to serve him regular meals was retaliation for "daring to take court action against their employer C[orrection] I[ndustries]." *See* Dkt. 16, at 16, 25. He asserts in his complaint that a food service worker taunted him that he had lost weight and that "[t]hey did'n' like ya' runnin' to the court like ya did." Dkt. 16, at 21. He also alleges that food service worker defendants stated that defendant McHaffie had directed them not to provide plaintiff with "'a regular tray.'" Dkt. 16, at 17.

The elements of a claim of retaliation are that "'(1) . . . a state actor took some adverse action against [plaintiff] (2) because of (3) [his] protected conduct, and . . . such action (4)

---

[1] Plaintiff does not bring a retaliation claim against defendant Edwards. *See* Dkt. 16, at 14–16.

1 | chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably
2 | advance a legitimate correctional goal.'" *Entler v. Gregoire*, 872 F.3d 1031, 1040 (9th Cir.
3 | 2017) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005)). In a claim for
4 | damages against a government official, qualified immunity shields the official from liability
5 | where the officials' "'conduct does not violate clearly established statutory or constitutional
6 | rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223,
7 | 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

8 | Determining whether a right is clearly established is an "objective but fact-specific
9 | inquiry"; the right is not clearly established unless "'the contours of the right [are] sufficiently
10 | clear that a reasonable official would understand that what he [or she] is doing violates the
11 | right.'" *See Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007) (quoting *Saucier v. Katz*, 533
12 | U.S. 194, 202 (2001)). Thus, the determination of whether a right was clearly established
13 | requires an inquiry into the reasonableness of a defendant's mistake. *See id.* at 712 n.6; *see also*
14 | *Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[T]he question is whether the officers' actions
15 | are 'objectively reasonable' in light of the facts and circumstances confronting them. . . ."). The
16 | Court must "examine the 'information possessed' by the [defendant] to determine whether a
17 | reasonable official in a particular factual situation should have been on notice that his or her
18 | conduct was illegal." *Inouye*, 504 F.3d at 712 (quoting *Anderson v. Creighton*, 483 U.S. 536,
19 | 641 (1987). The official's subjective beliefs are irrelevant. *Id.*

20 | Plaintiff has set forth evidence that after Ramadan ended, the CBCC defendants refused
21 | to provide plaintiff with regular food in lieu of the halal food that he believed was contaminated
22 | and that on one occasion, the food service workers did so while taunting plaintiff about "runnin'
23 | to the court[.]" *See* Dkt. 16, at 21. Of course, had the CBCC defendants starved plaintiff in

1 | retaliation for taking legal action, such action would violate the First Amendment. *See e.g.*,
2 | *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (pursuing civil rights litigation is protected
3 | activity).

4 | However, plaintiff fails to provide any facts supporting that the CBCC defendants
5 | possessed information to support that the meals that they served plaintiff were, in fact,
6 | contaminated after Ramadan. Defendants rely on evidence that on May 18, defendant McHaffie
7 | had learned of the contamination and then took action to ensure that by the beginning of
8 | Ramadan, prisoners were not receiving potentially contaminated food. *See* Dkt. 43, at 1–4.
9 | Indeed, plaintiff himself sets forth that after defendant Edwards resumed operations at the
10 | contaminated facility using an alternative production method, food service worker defendants
11 | told plaintiff that the food was now "'safe to eat'" and that they had "'been instructed to serve
12 | these tray[s] because the water problem . . . has been fixed.'" *See* Dkt. 16, at 17–18. Plaintff has
13 | stated that "'[w]hether all food products . . . were safe for consumption or not is moot, what is
14 | dispositive is, a 5-18-17 directive discontinuing all food [from the contaminated institution], was
15 | not rescinded at the time of the claimed safe consumption[.]'" Dkt. 16, at 23 (internal quotation
16 | omitted). Thus it is undisputed that after Ramadan ended, the CBCC defendants possessed only
17 | information that the halal food was safe to consume.

18 | Serving food that the CBCC defendants could reasonably have believed was safe to eat
19 | despite plaintiff's protestations is not behavior that a reasonable prison official would understand
20 | to violate the right to be free from retaliation by prison officials for filing legal action.
21 | Therefore, the CBCC defendants did violate a right that was clearly established. *See Saucier*,
22 | 533 U.S. at 201. Because the right was not clearly established, qualified immunity applies. *See*
23 | *Pearson*, 555 U.S. at 236.

24 |

1          Qualified immunity does not shield the CBCC defendants from liability to the extent that

2  plaintiff brings an action against them for injunctive relief.  *See Hydrick v. Hunter*, 669 F.3d 937,

3  940–41 (9th Cir. 2012).  Nevertheless, summary judgment should also be granted on plaintiff's

4  claim for declaratory relief if it is moot—that is, if there is no longer "'a substantial controversy,

5  between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

6  issuance of a declaratory judgment.'"  *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166,

7  1174–75 (2002) (quoting *Maryland Cas. Co. v. Pacific & Oil Co.*, 312 U.S. 270, 273 (1941)).

8  Plaintiff fails to provide any evidence to support that the contamination issue is ongoing or likely

9  to recur.  As such, his claim for declaratory relief is moot.

10         Finally, plaintiff's opposition in support of summary judgment makes a vague argument

11  that his right to religious freedom under the First Amendment was somehow violated.  *See* Dkt.

12  50, at 3.  This vague, unsupported allegation fails as a reason to deny summary judgment.

13         **IV.  Equal Protection Claims**

14         Plaintiff appears to asserts several theories under which the CBCC defendants violated

15  Equal Protection.[2]  First, plaintiff argues that after the CBCC defendants learned of the

16  contamination issue, they continued to serve contaminated meals to religious prisoners, including

17  plaintiff, yet served uncontaminated meals to nonreligious prisoners, thereby unlawfully

18  discriminating on the basis of religion.  *See* Dkt. 16, at 10, 25–26; *see also* Dkt. 50, at 2–3, 11.

19  Second, plaintiff argues that the food service worker defendants refused to serve plaintiff

20  alternative, uncontaminated meals after Ramadan, apparently claiming that this was unlawful

---

[2] Plaintiff does not assert that defendant Edwards violated Equal Protection.  *See* Dkt. 16, at 14–15.

1 | discrimination against him on the basis that he had taken legal action regarding the food
2 | contamination. *See* Dkt. 16, at 16.

3 | The first step in equal protection analysis is to identify the classification of groups—those
4 | groups must be "comprised of similarly situated persons so that the factor motivating the alleged
5 | discrimination can be identified." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir.
6 | 2005). Further, to survive summary judgment on an equal protection claim under § 1983,
7 | plaintiff must allege facts plausibly showing that "defendants acted with an intent or purpose to
8 | discriminate against [him] based upon membership in a protected class." *Id.* at 1166.
9 | Discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular
10 | course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects. *Navarro*
11 | *v. Block*, 72 F.3d 712, 716 n.5 (9th Cir. 1995) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S.
12 | 256, 279 (1979)).

13 | Here, plaintiff asserts that he was similarly situated to other, non-religious inmates, to
14 | who were served uncontaminated food, while religious inmates were served contaminated food.
15 | Although defendants argue that no contaminated food was served to religious inmates, they also
16 | argue in support of summary judgment that even if contaminated food were served to religious
17 | inmates, plaintiff has failed to come forward with any evidence that defendants acted with
18 | discriminatory intent.

19 | Where there is a complete failure of proof concerning an essential element of the
20 | nonmoving party's case on which the nonmoving party has the burden of proof, all other facts
21 | are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*
22 | *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff has failed to identify direct or indirect
23 | evidence other than the difference in treatment to show that the CBCC defendants were
24 |

motivated by an intent to discriminate. Although plaintiff relies on an alleged CBCC kitchen statement that "most Ramadan food was not [a]ffected," this is consistent with the DOC secretary's order to remove foods prepared with water at the institution with contamination issues. *See* Dkt. 50, at 11. Put simply, even accepting as true that the CBCC defendants served contaminated meals to plaintiffs, plaintiff has not provided any evidence to suggest that defendants did so on the basis of religion, rather than mistake. Such is fatal to his equal protection claim regarding religious discrimination. *See, e.g.*, *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003).

Plaintiff also appears to argue a "class of one" claim of discrimination on the basis that he was singled out for punishment after taking legal action against CBCC for serving allegedly contaminated food during Ramadan. *See* Dkt. 16, at 16. However, to prevail on such a claim, plaintiff had to identify how he was treated differently than someone who was prima facie identical in all relevant respects. *See N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). Plaintiff fails to provide any evidence or make any argument that other prisoners who participated in alternative meal plans and complained about contaminated food were treated differently than him, namely by being allowed to change meals without completing a formal request.

**V. *IFP* on Appeal**

*IFP* status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v.*

*Williams*, 490 U.S. 319, 325 (1989). Because plaintiff's complaint lacks any arguable basis in fact, the district court should certify that an appeal would not be taken in good faith.

## CONCLUSION

The undersigned recommends that defendants' motion for summary judgment (Dkt. 42) be **GRANTED**. Plaintiff's claims should be dismissed with prejudice, the district court should certify that any appeal would not be taken in good faith, and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **June 7, 2019**, as noted in the caption.

Dated this 20th day of May, 2019.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15